IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| CITY OF BETHANY, OKLAHOMA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. CIV-16-1005-D |
| | ) | |
| ROCKWELL AUTOMATION, INC. and | ) | |
| GULFSTREAM AEROSPACE CORP., | ) | |
| | ) | |
| Defendants. | ) | |

# **O R D E R**

Before the Court is Defendants' Motion to Dismiss City of Bethany's Claims for Injunctive Relief [Doc. No. 23], filed pursuant to Fed. R. Civ. P. 12(b)(1) and (b)(6). Defendants Rockwell Automation, Inc. and Gulfstream Aerospace Corp. move for partial dismissal of the Complaint, challenging a claim asserted under the Resource Conservation and Recovery Act, 42 U.S.C. §§ 6901-6981 ("RCRA"), and claims of nuisance and trespass to the extent they seek injunctive relief. Plaintiff City of Bethany has timely opposed the Motion, which is fully briefed and ripe for decision.[1]

## **Factual and Procedural Background**

This case concerns the alleged contamination of soil and groundwater, and a threat to Plaintiff's public water supply wells, caused by aircraft manufacturing operations conducted by Defendants' predecessors on land adjacent to Wiley Post Airport owned by

---

[1] Defendants filed an opening brief with exhibits [Doc. No. 24]; Plaintiff filed a response brief [Doc. No. 28]; Defendants filed a reply brief [Doc. No. 34]; and with permission, Defendants filed a supplemental exhibit [Doc. No. 38-1]. *See* Order of June 27, 2017 [Doc. No. 39].

the Oklahoma City Airport Trust ("OCAT"). The contamination is the subject of remedial work voluntarily undertaken by OCAT and Defendants under supervision of the Oklahoma Department of Environmental Quality ("DEQ") pursuant to a Memorandum of Agreement and Consent Order entered in October 2009 and amended in July 2013. Test data from the investigation shows a migration of toxic substances toward one of the wellfields that Plaintiff uses to supply drinking water for customers. Plaintiff first discontinued use of certain wells to avoid unsafe water and to stop further migration, and then on the advice of an environmental consultant, Plaintiff discontinued use of its entire southern wellfield.

Plaintiff filed this action on August 31, 2016, to recover compensatory and punitive damages under various state law theories, including common law torts and statutes that protect municipal water supplies. *See* Okla. Stat. tit. 11, §§ 37-115 & 37-116. Plaintiff alleges it incurred numerous costs associated with responding to the contamination and was forced to purchase replacement water from the City of Oklahoma City, which increased the operating cost of its water system.[2] In addition, Plaintiff allegedly has begun efforts to develop another wellfield to meet its water needs.

Plaintiff also asserts a claim under RCRA, which authorizes a private action to abate an "imminent and substantial endangerment to health or the environment" but does not allow a recovery of damages. *See* 42 U.S.C. § 6972(a)(1)(B); *see also Meghrig v. KFC W., Inc.*, 516 U.S. 479, 484-85 (1996). Plaintiff seeks "injunctive and equitable relief to compel Defendants to comply with RCRA and to abate the continuing nuisance and

---

[2] Plaintiff passed an ordinance effective August 1, 2016, that permits higher water supply costs to be charged to certain customers. *See* Compl. [Doc. No. 1], ¶ 80.

trespass by removing toxic chemicals . . . from soil and groundwater." *See* Compl. [Doc. No. 1] at 25 (Prayer for Relief, ¶ b).

On October 6, 2016, approximately one month after this action was filed, DEQ, OCAT, and Defendants entered into an Amended Voluntary Consent Order for Interim Remedial Measures (the "Consent Order"), which further amended their prior agreement. The Consent Order obligates OCAT and Defendants to address the migration of certain chemical compounds from the manufacturing site to adjacent areas by performing specific activities, including the design and implementation of a remedial action plan to minimize further migration. Although undertaken through DEQ's voluntary cleanup program, the Consent Order is enforceable as a final order of DEQ, which retains jurisdiction "for the purposes of interpreting, implementing, and enforcing the terms and conditions of this Order and for the purpose of resolving disputes." *See* Consent Order [Doc. No. 24-11], ¶ 20. The requirements of the Consent Order will be satisfied only when DEQ gives written notice that OCAT and Defendants "have demonstrated that all the terms of the Order have been completed to the satisfaction of the DEQ." *Id*. ¶ 26.

Defendants first move to dismiss Plaintiff's RCRA claim for lack of subject matter jurisdiction. They do not challenge Plaintiff's bases of federal jurisdiction,[3] but instead invoke the doctrine of primary jurisdiction and raise an issue of mootness based on the Consent Order. On these same grounds, Defendants move to dismiss Plaintiff's state-law tort claims of nuisance and trespass "to the extent those claims seek injunctive relief in

---

[3] *See* Compl. [Doc. No. 1], ¶¶ 21-22 (invoking 28 U.S.C. § 1332 and 42 U.S.C. § 6972).

light of the ongoing remedial efforts undertaken by [Defendants]." See Defs.' Mot. Dismiss [Doc. No. 23] at 2. Defendants alternatively move to dismiss the RCRA action for failure to state a claim on which relief can be granted.

## Standard of Decision

The jurisdictional aspects of Defendants' Motion are governed by Rule 12(b)(1). Under this rule, where "the movant goes beyond the allegations in the complaint and challenges the facts upon which subject matter jurisdiction depends . . . , the court must look beyond the complaint and has wide discretion to allow documentary and even testimonial evidence." *Paper, Allied-Indus., Chem. & Energy Workers Int'l Union v. Continental Carbon Co.*, 428 F.3d 1285, 1292 (10th Cir. 2005); *see Holt v. United States*, 46 F. 3d 1000, 1002-03 (10th Cir. 1995). A court may consider these materials without converting the motion to one for summary judgment under Rule 56 unless "the jurisdictional question is intertwined with the merits of the case." *Holt*, 46 F. 3d at 1003; *see Pringle v. United States*, 208 F.3d 1220, 1222 (10th Cir. 2000); *see also Los Alamos Study Group v. U. S. Dep't of Energy*, 692 F.3d 1057, 1063-64 (10the Cir. 1012). The issues are considered to be intertwined where "resolution of the jurisdictional question requires resolution of an aspect of the substantive claim." *Pringle*, 208 F.3d at 1223; *see Sizova v. Nat'l Inst. Standards & Tech.*, 282 F.3d 1320, 1324 (10th Cir. 2002).

In the present Motion, Defendants rely on matters outside the Complaint and so raise a factual attack on jurisdiction. *See E.F.W. v. St. Stephen's Indian High Sch.*, 264 F.3d 1297, 1303 (10th Cir. 2001) (factual attacks "go beyond the allegations contained in the complaint"). Defendants raise an issue of primary jurisdiction that does not challenge

4

the merits of Plaintiff's underlying claims, and this aspect of the Motion may properly be decided under Rule 12(b)(1). Regarding mootness, however, the Court finds for reasons discussed *infra* that this issue is intertwined with the merits of Plaintiff's RCRA claim and must be decided under Rule 56. The Court declines to convert the Motion to one for summary judgment on the present briefs and the existing record, and reserves this issue for decision after further factual development.

## Mootness

"Mootness is a threshold issue because the existence of a live case or controversy is a constitutional prerequisite to federal court jurisdiction." *Ind v. Colorado Dep't of Corr.*, 801 F.3d 1209, 1213 (10th Cir. 2015) (internal quotation omitted); *accord Rio Grande Silvery Minnow v. Bureau of Reclamation*, 601 F.3d 1096, 1109 (10th Cir. 2010).[4] "[M]ootness is 'the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness).'" *S. Utah Wilderness All. v. Smith*, 110 F.3d 724, 727 (10th Cir. 1997) (quoting *Arizonans for Official English v. Arizona*, 520 U.S. 43, 68 n.22 (1997)). The central inquiry is whether "circumstances [have] changed since the beginning of litigation that forestall any occasion for meaningful relief." *Id.* (internal

---

[4] In addition to mootness based on Article III of the Constitution, there is a prudential mootness doctrine that considers the propriety of granting relief in a case where comity concerns arise. *See Jordan v. Sosa*, 654 F.3d 1012, 1024 (10th Cir. 2011). The doctrine of prudential mootness "has particular applicability in cases . . . where the relief sought is an injunction against the government." *S. Utah Wilderness All.*, 110 F.3d at 727. Defendants primarily rely on constitutional mootness, mentioning prudential mootness only in a footnote. *See* Defs.' Mem. Supp. Mot. Dismiss [Doc. No. 24] at 16-17 n.18. The Court finds this argument is not sufficiently developed, and declines to address it.

quotation omitted); *see Nat'l Advert. Co. v. City of Denver*, 912 F.2d 405, 411 (10th Cir. 1990) ("The relief sought must be capable of addressing the alleged harm.") (internal quotation omitted). Where a plaintiff seeks prospective injunctive relief, for purposes of the mootness inquiry, "his susceptibility to *continuing* injury is of particular importance – '[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects." *Jordan v. Sosa*, 654 F.3d 1012, 1024 (10th Cir. 2011) (quoting *O'Shea v. Littleton*, 414 U.S. 488, 495-96 (1974)) (emphasis in original); *see Citizen Ctr. v. Gessler*, 770 F.3d 900, 906 (10th Cir. 2014). "A party claiming that there is no longer a live case or controversy bears the burden of demonstrating mootness." *In re Paige*, 584 F.3d 1327, 1336 (10th Cir. 2009) (internal quotation omitted).

In this case, Defendants assert that Plaintiff's claims for injunctive relief are moot because the Consent Order serves the same purpose and has the same effect as the mandatory injunction sought by the Complaint. Defendants contend the Consent Order and their abatement activities provide the same relief that Plaintiff could obtain under RCRA or the tort claims for injunctive relief. The injunction sought by Plaintiff would "compel Defendants to comply with RCRA and to abate the continuing nuisance and trespass by removing toxic chemicals, including TCE [Trichloroethene] and PCE [Tetrachloroethene], from soil and groundwater." *See* Compl. [Doc. No. 1] at 25 (Prayer for Relief, ¶ b). Defendants do not contend that abatement of these chemicals has occurred, but that the Consent Order requires abatement and provides the relief Plaintiff seeks. In support of this contention, Defendants provide evidence that their efforts to

6

comply with the Consent Order have already resulted in DEQ's approval of a remedial action plan and meaningful progress toward implementation of the plan.

Plaintiff responds to Defendants' mootness argument by arguing that the Consent Order directs a voluntary effort and lacks any assurance of timely or effective abatement of the contamination. Plaintiff argues that the delay often encountered in administrative proceedings is antithetical to its RCRA remedy because "[t]he primary goal of the RCRA's citizen suit provision is the prompt abatement of imminent and substantial endangerments [to health and the environment]." *See* Pl.'s Resp. Br. [Doc. No. 28] at 17 (internal quotation omitted). Further, Plaintiff argues, "a federal court may order a more extensive or complete remedy under RCRA than that imposed by a state agency." *Id*. Plaintiff contends the cases cited by Defendants in support of a finding of mootness "are not persuasive" and were primarily decided by summary judgment. *See id*. at 18-19.

Upon consideration, the Court finds that a determination of whether Defendants have carried their burden to establish that Plaintiff's RCRA claim is moot, requires an examination of the merits of the claim. The Court is mindful that "RCRA is not principally designed to effectuate the cleanup of toxic waste sites" but "to reduce the generation of hazardous waste and to ensure the proper treatment, storage, and disposal of that waste which is nonetheless generated, 'so as to minimize the present and future threat to human health and the environment.'" *See Meghrig*, 516 U.S. at 483 (quoting 42 U.S.C. § 6902(b)); *see also Trinity Indus., Inc. v. Chicago Bridge & Iron Co*., 735 F.3d 131, 140 (3d Cir. 2013). However, federal appellate courts addressing the issue of mootness of RCRA claims due to remedial action taken under state regulatory oversight, have affirmed

a denial of relief where a consent order is in place and appears to be effective. *See Trinity*, 735 F.3d at 140; *see also Ctr. for Biological Diversity, Inc. v. BP Am. Prod. Co.*, 704 F.3d 413, 431 (5th Cir. 2013) (remediation under the Clean Water Act).

Here, Plaintiff contends the question of timely and effective abatement remains unresolved by the Consent Order, particularly in light of DEQ's past involvement at the site for more than seven years. Although the Court is not entirely persuaded by Plaintiff's argument, the Court finds that it is not clear from the existing record whether Plaintiff's RCRA and nuisance claims regarding abatement will be fully resolved in a timely and effective manner by Defendants' current activities under the Consent Order. Therefore, the Court reserves the issue of mootness for decision under Rule 56 following further factual development.

## Primary Jurisdiction

The doctrine of primary jurisdiction allows a district court with subject matter jurisdiction over a claim to stay or dismiss the claim until the appropriate administrative agency has ruled on the matter. *See Reiter v. Cooper*, 507 U.S. 258, 268-69 (1993). The purpose of the doctrine is "'to allow an agency to pass on issues within its particular area of expertise before returning jurisdiction to the federal district court for final resolution of the case.'" *See TON Servs., Inc. v. Qwest Corp.*, 493 F.3d 1225, 1238 (10th Cir. 2007) (quoting *Crystal Clear Commc'ns, Inc. v. Sw. Bell Tel. Co.*, 415 F.3d 1171, 1179 (10th Cir. 2005)). The Tenth Circuit has provided the following guidance:

> In this circuit, a district court's decision to invoke the primary jurisdiction doctrine "require[s] it to consider whether the issues of fact in the case: (1) are not within the conventional experience of judges; (2)

> require the exercise of administrative discretion; or (3) require uniformity and consistency in the regulation of the business entrusted to the particular agency. *Crystal Clear Commc'ns*, 415 F.3d at 1179. Additionally, when the regulatory agency has actions pending before it which may influence the instant litigation, invocation of the doctrine may be appropriate.

*Id*. at 1239 (citation omitted) (alteration by the court in *TON Servs.*). The decision to invoke the doctrine is discretionary, and should be made on a case-by-case basis after considering "whether 'the reasons for the existence of the doctrine are present and whether the purposes it serves (i.e., uniformity and resort to administrative expertise) will be aided by its application in the particular litigation.'" *Id.* (quoting *United States v. W. Pac. R.R.*, 352 U.S. 59, 64 (1956)).

In this case, Defendants assert that DEQ has primary jurisdiction over the remediation sought by Plaintiff's RCRA claim. Defendants ask the Court to dismiss this claim, or bar Plaintiff from proceeding on its claims for injunctive relief, because DEQ is responsible for enforcing environmental regulations in Oklahoma, including RCRA, and Plaintiff's pursuit of these claims will interfere with remedial measures being taken under the Consent Order.

Plaintiff asserts that its RCRA claim is a citizens suit expressly authorized by 42 U.S.C. § 6972(a)(1)(B) to abate an imminent and substantial endangerment to health and the environment by persons who have generated, stored, treated, or disposed of hazardous waste, such as the toxic chemicals at issue in this case. Plaintiff contends that Congress provided this remedy to permit immediate judicial relief as a supplement to other environmental laws, that federal courts have exclusive jurisdiction over RCRA claims, and that federal courts should not defer to regulatory agencies under these circumstances. *See*

Pl.'s Resp. Br. [Doc. No. 28] at 6-9. Plaintiff also relies on *Marshall v. El Paso Natural Gas Co.*, 874 F.2d 1373 (10th Cir. 1989), for the proposition that courts routinely deal with pollution issues and there is no need for agency deference or judicial abstention on these issues.

Upon consideration of the appropriate factors in this case, the Court finds that the doctrine of primary jurisdiction applies and that judicial action on Plaintiff's RCRA claim and tort claims seeking a mandatory injunction should be deferred. Under the circumstances, however, where further judicial proceedings are contemplated and pending administrative action may affect Plaintiff's action, a stay rather than dismissal is appropriate. *See TONS Servs.*, 493 F.3d at 1243.

First, while Plaintiff correctly argues that federal district courts routinely deal with pollution issues, that is not the real point. Plaintiff's RCRA and injunction claims, if successful, would require the Court to fashion a remedy to abate the alleged contamination in a timely and effective manner. In Oklahoma, this task is assigned by federal and state law to DEQ, which is uniquely equipped with the expertise and means to evaluate, design, monitor, and effectuate the necessary remedial work. In this case, DEQ already has a substantial head start toward abating the alleged contamination on the subject property affecting Plaintiff's water supply wells. Plaintiff does not dispute this fact, but seeks to distinguish the Consent Order because it was issued under DEQ's voluntary cleanup program rather than its RCRA authority. In fact, Plaintiff concedes (albeit in a footnote) that a stay of judicial action is appropriate where DEQ is exercising proper regulatory authority. *See* Pl.'s Resp. Br. [Doc. No. 18] at 12 n.3 ("If Defendants were to agree to

enter into the DEQ's RCRA Corrective Action program, Plaintiff would voluntarily request that this Court stay the RCRA cause of action (only) pending completion of the RCRA Corrective Action process."). The Court finds insufficient reason to interfere in an ongoing abatement process simply because DEQ's exercise of authority began voluntarily rather than as a part of an RCRA enforcement action.[5]

Closely linked to the expertise factor, the factors of administrative discretion and regulatory consistency also weigh in favor of deference to DEQ's existing proceeding to abate the contamination affecting Plaintiff's water wells. Plaintiff argues that RCRA authorizes this Court to determine its own abatement plan and to "order a more extensive or complete remedy under RCRA than that imposed by a state agency." *Id*. at 12. Any such order would necessarily subject Defendants to different requirements and interfere with DEQ's approved plan, and could undermine the uniformity and consistency needed for DEQ to implement an effective remedial program. Further, Plaintiff's contention that the Consent Order does not guarantee a permanent or complete remedy ignores the fact that RCRA requires prompt abatement of an immediate threat. "RCRA is not principally designed to effectuate the cleanup of toxic waste sites." *See Meghrig*, 516 U.S. at 483.

Finally, Plaintiff does not disagree with Defendants that DEQ has already made substantial progress in evaluating the immediate threat to Plaintiff's water wells, approving a remedial work plan, and overseeing its implementation. Plaintiff's main complaint seems to be that the DEQ proceeding has taken too long. But Plaintiff fails to explain

---

[5] Indeed, where a state enforcement action has been initiated, RCRA prohibits federal courts from hearing an RCRA citizen's suit. *See* 42 U.S.C. § 6972(b)(2)(C).

11

how this RCRA action could accomplish a speedier or more effective abatement remedy than the existing administrative proceeding. In summary, the Court finds that Plaintiff's RCRA and abatement action should be stayed to permit DEQ to exercise its primary jurisdiction over the alleged contamination in this case.

## Conclusion

For these reasons, the Court finds that Plaintiff's RCRA claim and its demands for injunctive relief are barred by the doctrine of primary jurisdiction and that Plaintiff's action should proceed at the present time only on Plaintiff's tort claims for damages.

IT IS THEREFORE ORDERED that Defendants' Motion to Dismiss City of Bethany's Claims for Injunctive Relief [Doc. No. 23] is GRANTED in part and DENIED in part, as set forth herein. Further proceedings on Plaintiff's Ninth Claim for Relief asserted in the Complaint and the prayer for injunctive relief are STAYED pending the completion of administrative proceedings of the Oklahoma Department of Environmental Quality in *In re Former Aero Commander Facility at Wiley Post Airport*, Case No. 09-301.

IT IS SO ORDERED this 30th day of August, 2017.

_____
TIMOTHY D. DeGIUSTI
UNITED STATES DISTRICT JUDGE