UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

-------------------------------------------------------

CITY OF BETHANY, OKLAHOMA,

                                                             Case No. 16-CV-1005-SLP

    Plaintiff,

        v.

ROCKWELL AUTOMATION, INC., and
GULFSTREAM AEROSPACE CORP.,

                Defendants.

-------------------------------------------------------

**PLAINTIFF'S MOTION AND BRIEF IN SUPPORT OF ITS MOTION
TO AMEND AND SUPPLEMENT ITS COMPLAINT
AND TO JOIN ADDITIONAL PARTIES**

    Plaintiff City of Bethany, Oklahoma ("Bethany"), hereby moves this Court for leave to amend and supplement its complaint pursuant to Fed. R. Civ. Proc. 15 and Fed. R. Civ. Proc. 20 to add the City of Oklahoma City, Oklahoma ("Oklahoma City"), and the Oklahoma City Airport Trust ("OCAT") as defendants in this action.

    1.    Pursuant to this Court's order dated April 2, 2018 (Dkt. No. 52), the deadline to amend the complaint and join additional parties was extended to July 2, 2018.

    2.    This lawsuit was filed on August 31, 2016, against Rockwell Automation, Inc. ("Rockwell"), and Gulfstream Aerospace Corp. ("Gulfstream"), who owned and operated aircraft manufacturing facilities on the approximately 43 acre Wiley Post Airport property located at 7400 N.W. 50th Street in Bethany, Oklahoma (the "Site"), from which hazardous substances were released that are contaminating and threatening to contaminate Bethany's public water supply wells.

1

3.      At the time Bethany filed this lawsuit, the toxic chemicals trichloroethylene ("TCE") and tetrachloroethylene ("PCE" or "perc") had been discovered in public supply wells in Bethany's South Wellfield and in the groundwater migrating from the Site toward the South Wellfield.

4.      Bethany brought claims seeking damages and injunctive relief for nuisance, trespass, negligence, negligence per se, unlawful pollution of a municipal water supply, gross negligence, willful injury to property, and violations of the Resource Conservation and Recovery Act, 42 U.S.C. §§ 6901-6981 ("RCRA").

5.      Defendants brought counterclaims against Bethany under Sections 107(a) and 113(f)(3)(B) of Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. §§ 9607(a), 9613(f)(3)(B), and for nuisance and unjust enrichment.  Defendants' CERCLA § 107(a) claim was dismissed (Dkt. No. 41).

6.      In his August 30, 2017 order (Dkt. No. 40), Judge DeGiusti stayed Plaintiffs' RCRA claim and demands for injunctive relief pending the completion of administrative proceedings of the Oklahoma Department of Environmental Quality in *In re Former Aero Commander Facility at Wiley Post Airport,* Case No. 09-301, and ordered that this case should move forward on Plaintiff's tort claims for damages.

7.      Plaintiff seeks leave to amend and supplement its complaint and add additional parties because circumstances have changed since the filing of the original complaint.  Since filing its complaint, Bethany learned in 2017 that additional toxic chemicals had been detected in the groundwater and were impacting the South Wellfield, including 1,4-dioxane and per- and polyfluoroalkyl substances ("PFAS") that were

2

discovered in September 2017.  In August 2017, Bethany also learned that wells in its North Wellfield were being impacted by VOCs, which include TCE and PCE, and PFAS.

8. Fed. R. Civ. P. 15(a)(2) provides that leave to amend should "be freely given when justice so requires."

9. Refusing leave to amend is generally only justified upon a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment. *See, Frank v. U.S. W., Inc.,* 3 F.3d 1357, 1365 (10th Cir. 1993) (internal citations omitted).

10. Fed. R. Civ. P. 15(d) provides that a court may "on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented."

11. Supplemental pleadings "should be liberally granted unless good reason exists for denying leave, such as prejudice to the defendants." *Walker v. United Parcel Service, Inc.,* 240 F.3d 1268, 1278 (10th Cir. 2001) (internal citations omitted).

12. Fed. R. Civ. P. 20 (a) authorizes joinder of parties where two criteria are met: (1) the claims by or against joined parties arise out of the same transaction or occurrence or series of transactions or occurrences; and (2) some question of law or fact is common to all of the joined parties. Fed. R. Civ. P. 20(a).

13. Joinder of parties is "strongly encouraged." *United Mine Workers of America v. Gibbs,* 383 U.S. 715, 724 (1966).  Courts look to policies that support party joinder, including efficiency, convenience, consistency, and fundamental fairness. *See, e.g., Revilla v. Glanz,* 7 F. Supp. 3d 1207, 1213-14 (N.D. Okla. 2014) (finding that

judicial economy would be served by denying to sever joined parties, "as the common issues of law and fact and logical relationship between the claims would likely result in duplicative discovery and dispositive motions covering common issues of law and fact").

14.     Courts generally apply a logical relationship test to determine whether a particular factual situation constitutes a transaction or occurrence, and under that test, all logically related events entitling a person to institute a legal action against another generally are regarded as comprising a transaction or occurrence. *See Revilla,* 7 F. Supp. 3d at 1211-1213.

15.     Rockwell and Gulfstream owned and operated the Site and used it for the manufacture of aircraft and aircraft parts from the mid-1950s until 2002, but during that time ownership was transferred to OCAT.

16.     In addition, OCAT and Oklahoma City own the larger Wiley Post Airport property, which encompasses approximately 1390-acres and contains a number of other industrial and aircraft maintenance facilities, as well as the Rockwell and Gulfstream Site.

17.     On October 26, 2009, OCAT entered into a Memorandum of Agreement and Consent Order with the Oklahoma Department of Environmental Quality ("ODEQ") in which OCAT agreed to investigate and perform certain remedial activities in order to address the contaminants on and in the vicinity of the Rockwell and Gulfstream Site.

18.     In December 2010, Rockwell and Gulfstream entered into a cost-sharing agreement with OCAT by which Rockwell and Gulfstream agreed to finance 86 percent

of the costs incurred to perform and complete the environmental remediation at the Site, with OCAT contributing the remaining 14 percent.

19.     Investigation into the sources of the additional contamination are preliminary at best.  While Defendants, and OCAT, purport to have studied the source of the TCE and PCE emanating from the Site toward Bethany's South Wellfield, no party has taken steps to identify the source or the extent of the contamination related to newly discovered contaminants in the South Wellfield and the contamination that is now impacting the Northern Wellfield.  (While Defendants Rockwell and Gulfstream allege that Bethany's sewer line is the source of the PCE contamination impacting the groundwater underneath and emanating from the Site, Bethany alleges that the TCE and PCE contamination impacting its South Wellfield resulted from the operations of Defendants Rockwell and Gulfstream at the Site.)

20.     Both the South and North Wellfields are west of the Site and the larger Wiley Post Airport property and groundwater in the area flows in the general direction of east to west.

21.     Bethany's claims against OCAT and Oklahoma City for contamination of its water supply arise out of the same transactions or occurrences or series of transactions or occurrences as its claims against Defendants, and there are questions of law or fact common to all of the parties.

22.     While Defendants may argue that the contamination they are responsible for can be separated from the contamination impacting the Northern Wellfield, it does not change the fact that the same contaminants (TCE and PCE) found emanating from their

former Site are now impacting the Northern Wellfield, that newly discovered toxic chemicals (1,4-dioxane and PFAS) are impacting the South Wellfield, and that OCAT and Oklahoma City own and/or operate the property and facilities, including Defendants' former facility, from which the contamination would have been released.

23. OCAT is one of the parties responsible for remediating Defendants' former facility, and, prior to the discovery of the contamination in the Northern Wellfield, Bethany had explored expanding the Northern Wellfield in order to address Defendants' contamination.

24. In the interest of fairness and judicial economy, Bethany should not be forced to engage in duplicative discovery and litigation in order to resolve its public water crisis.

25. In the interest of justice, Bethany should be allowed to amend its complaint to join parties whose property is the source of contamination causing an ongoing nuisance and trespass and is contaminating a public water supply.

26. Furthermore, granting Plaintiff leave to amend and supplement will not result in undue delay or undue prejudice to Defendants. The parties have engaged in minimal document discovery to date, and joining the additional parties could serve the interest of judicial economy by resolving the entire controversy. *See, e.g., Walker,* 240 F.3d at 1278 (affirming district court's finding that defendant would be prejudiced if plaintiff were allowed to supplement because discovery was closed, defendant had already moved for summary judgment on all of plaintiff's claims, and defendant was ready for trial).

27. This Court currently has jurisdiction over this action based on diversity jurisdiction under 28 U.S.C. § 1332 and federal-question jurisdiction under 28 U.S.C. § 1331 because Plaintiff has a federal RCRA claim currently stayed. This Court also has supplemental jurisdiction over Plaintiff's related state law claims under 28 U.S.C. § 1367(a).

28. While the joinder of additional parties OCAT and the City of Oklahoma City would defeat diversity jurisdiction, this Court retains federal-question jurisdiction and supplemental jurisdiction and can exercise it over OCAT and the City of Oklahoma City.

29. Plaintiff sought consent to this motion from Defendants and Defendants object.

30. A proposed Order granting this motion is being submitted with this Motion for consideration by the Court.

31. A copy of the proposed amended complaint is attached as an exhibit to this Motion.

Wherefore, Plaintiff respectfully requests that this Court grant its Motion to Amend and Supplement its Complaint and to Join Additional Parties.

Respectfully submitted,

*/s/ Nancy M. Christensen*
Robin L. Greenwald, Esq. (*pro hac vice*)
Curt D. Marshall, Esq. (*pro hac vice*)
Nancy M. Christensen, Esq. (*pro hac vice*)
**WEITZ & LUXENBERG, P.C.**

700 Broadway
New York, NY  10003
Telephone:  212-558-5505
Facsimile:  212-344-5461
rgreenwald@weitzlux.com
cmarshall@weitzlux.com
nchristensen@weitzlux.com

David P. Page, Esq. OBA #6852
**BARBER & BARTZ, LLP**
525 S. Main St. #800
Tulsa, OK  74103
Telephone:  918-599-7755
dpage@barberbartz.com
 *Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on I hereby certify that on the 2nd day of July, 2018, I electronically filed the above and foregoing with the clerk of the court using the CM/ECF system, which will send electronic notice to:

Stephen L. Jantzen
Ryan Whaley Coldiron Jantzen Peters & Webber PLLC
119 North Robinson, Suite 900
Oklahoma City, OK 73102
*Counsel for Defendants*

Steven M. Siros
Jenner & Block LLP
353 N. Clark Street
Chicago, IL 60654
*Counsel for Defendants*

> */s/ Nancy M. Christensen*
> Nancy M. Christensen