## IN THE DISTRICT COURT OF THE UNITED STATES
## FOR THE WESTERN DISTRICT OF OKLAHOMA

------------------------------------------------------

CITY OF BETHANY, OKLAHOMA,

           Plaintiff,

                 v.

ROCKWELL AUTOMATION, INC.,
GULFSTREAM AEROSPACE CORP., CITY
OF OKLAHOMA CITY, OKLAHOMA, and
OKLAHOMA CITY AIRPORT TRUST

                Defendants.

------------------------------------------------------

Case No.  16-CV-1005-SLP

## FIRST AMENDED COMPLAINT

Plaintiff City of Bethany, Oklahoma ("Bethany"), by its attorneys, Weitz & Luxenberg, P.C. and Barber & Bartz, LLP, hereby alleges as follows:

### NATURE OF THE CASE

1.     Bethany brings this action against Defendants to forestall a water quality emergency and attendant irreparable harm created by Defendants' contamination of groundwater in the immediate vicinity of its public water supply wells.

2.     Bethany seeks to recover past and future costs of treating, testing and monitoring its drinking water wells and providing clean replacement water to its customers because Defendants have contaminated the groundwater in the immediate vicinity of Bethany's public drinking water supply wells.  Bethany owns and operates the

- 1 -

public drinking water system that supplies drinking water to thousands of its residents and businesses.

3.      Defendants Rockwell Automation, Inc., ("Rockwell") and Gulfstream Aerospace Corp. ("Gulfstream") owned and operated aircraft manufacturing facilities on the approximately 43 acre Wiley Post Airport property located at 7400 N.W. 50th Street in Bethany, Oklahoma (the "Rockwell and Gulfstream Site" or the "Site"), from which hazardous substances were released that are contaminating and threatening to contaminate Plaintiff's public water supply wells.

4.      Defendants City of Oklahoma City, Oklahoma ("Oklahoma City"), and the Oklahoma City Airport Trust ("OCAT") owned and/or operated facilities on the 43-acre Rockwell and Gulfstream Site and the larger Wiley Post Airport property, which encompasses approximately 1390-acres and contains a number of other industrial and aircraft maintenance facilities.

5.      Bethany operates two wellfields that supply drinking water to its residents—the South Wellfield and the North Wellfield.

6.      In about 2008, Defendants first became aware that releases of hazardous substances from the Site had caused contamination in the groundwater upgradient from the public water supply wells in Bethany's South Wellfield, but Bethany was not notified of the migration of a plume of these toxic chemicals toward its South Wellfield until August 2012.

7.      The toxic chemicals released by Defendants at the Site include Trichloroethylene ("TCE") and Tetrachloroethylene ("PCE" or "perc"), which are

halogenated solvents that are volatile organic compounds ("VOCs") that are known carcinogens that do not occur naturally in the environment, and were widely used in the aircraft manufacturing industry during the years the Rockwell and Gulfstream Site was in operation, and are hazardous and solid wastes under the Resource Conservation and Recovery Act, 42 U.S.C. §§6901 et seq. ("RCRA").

8.      TCE and PCE are chlorinated solvents typically used as chemical/vapor degreasers in aircraft manufacturing processes and are common ingredients used in aircraft coatings.

9.      TCE and PCE have been detected in the groundwater at and emanating from the Rockwell and Gulfstream Site to the South Wellfield.

10.     In late 2017, Bethany learned that additional toxic chemicals, including 1,4-dioxane and per- and polyfluoroalkyl substances ("PFAS"), had been detected in the groundwater and were impacting the South Wellfield.

11.     1,4-Dioxane was commonly used as a stabilizer for storage and transportation of 1,1,1-trichloroethane ("1,1,1-TCA") in aluminum containers and does not naturally occur in the environment.

12.     PFAS often were used in firefighting foams, like aqueous film forming foam ("AFFF"), as well as other manufacturing processes, and have been found in groundwater emanating from airports, military bases, and other industrial facilities around the country.

13.     In August 2017, Bethany also learned that wells in its North Wellfield were being impacted by VOCs, which include TCE and PCE, and PFAS.

14.     Upon information and belief, groundwater that supplies the North Wellfield is being impacted by releases from facilities located on the Wiley Post Airport property, which is owned and operated by Defendants Oklahoma City and OCAT.  The North Wellfield is west of the Wiley Post Airport property, and groundwater in its vicinity flows from east to west.

15.     Bethany commences this action to recover compensatory and all other damages including, but not limited to, all necessary funds to reimburse Bethany for the costs of monitoring and testing for contaminants, the costs of operating, maintaining and upgrading the treatment facilities and equipment required to comply with state and federal safe drinking water laws and to remove contaminants from the drinking water it supplies to the public and/or for the costs of securing alternative sources of water as a result of the contamination, and to ensure that the responsible parties bear such expense, rather than Bethany and its customers and ratepayers.

16.     In this action, Plaintiff asserts claims for: (a) public and/or private nuisance; (b) trespass; (c) negligence; (d) negligence per se; (e) unlawful pollution of a municipal water supply; (f) gross negligence; (g) willful injury to property; and (h) violations of the Resource Conservation and Recovery Act.

**PARTIES**

17.     Plaintiff Bethany is a municipality in the County of Oklahoma, State of Oklahoma.

18.     Bethany is the current owner and operator of multiple wells, which it uses to provide drinking water to its residents, and which are threatened or contaminated by the release of hazardous and toxic chemicals by Defendants.

19.     Defendant Rockwell Automation, Inc. ("Rockwell") is a Delaware corporation with its principal place of business at 1201 South Second Street, Milwaukee, Wisconsin.

20.     Defendant Gulfstream Aerospace Corporation ("Gulfstream") is a Georgia corporation with its principal place of business at 500 Gulfstream Road, Savannah, Georgia.

21.     Defendant Oklahoma City is a municipality in the County of Oklahoma, State of Oklahoma.

22.     Defendant OCAT is a public trust having the city of Oklahoma City as its sole beneficiary.

23.     Rockwell, Gulfstream, Oklahoma City, and OCAT (collectively, "Defendants") and/or their predecessors-in-interest owned and operated the Rockwell and Gulfstream Site and/or other facilities on the larger Wiley Post Airport property from which there were releases at the time of the disposal and release of hazardous and toxic substances.

24.     When reference is made in this Complaint to any act or omission of any of the Defendants, it shall be deemed that the officers, directors, agents, employees or representatives of the Defendants committed or authorized such act or omission, or failed to adequately supervise or properly control or direct their employees while engaged in the

management, direction, operation or control of the affairs of Defendants, and did so while acting within the scope of their duties, employment or agency.

25.     The term "Defendant" or "Defendants" refers to all Defendants named herein.

## JURISDICTION & VENUE

26.     Plaintiff Bethany is a citizen of the State of Oklahoma.

27.     Defendant Rockwell is a citizen of the States of Delaware and Wisconsin.

28.     Defendant Gulfstream is a citizen of the State of Georgia.

29.     Defendant Oklahoma City is a citizen of the State of Oklahoma.

30.     Defendant OCAT is a citizen of the State of Oklahoma.

31.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because the action arises under the laws of the United States.

32.     This Court has subject-matter jurisdiction pursuant to 42 U.S.C. § 6972.

33.     This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over all other claims that are within the same case or controversy.

34.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because the events giving rise to the claim occurred and the property that is the subject of the action is situated in Bethany, Oklahoma County, Oklahoma, within the Western District of Oklahoma.

## FACTUAL BACKGROUND

35.     Bethany is a small town in Oklahoma that covers about 5.2 square miles and is located entirely within the boundaries of the much larger city of Oklahoma City.

36.     Bethany has a population of about 19,000 people, while the total Oklahoma City metropolitan area has a population of about 1.5 million.

37.     Although it is located within the boundaries of Oklahoma City, Bethany is a separate municipality that assesses its own taxes and provides its own municipal services, has its own police and fire departments, and operates its own public works department, which among other things provides water to residents for a fee.

38.     Bethany obtains its raw drinking water from two wellfields located in Bethany, referred to as the North and South Wellfields, and operates its own water treatment plant, located at 8200 N.W. 50th St., in which the raw drinking water is treated before being distributed to customers.

39.     Bethany's South Wellfield is located west of the Wiley Post Airport.

40.     On the south side of the airport, located at 7400 N.W. 50th St., is the 43-acre Site that was owned and operated by Defendant Rockwell, through its predecessors-in-interest and affiliates, and Defendant Gulfstream, itself and through its predecessors-in-interest and affiliates, and used for the manufacture of aircraft and aircraft parts from the mid-1950s until 2002.

41.     In 1956, buildings were first constructed on the Site for an aircraft manufacturing plant.

42.     From 1956 to 1958, Aero Design and Engineering ("Aero Design"), a wholly-owned subsidiary of Rockwell-Standard Corporation ("Rockwell-Standard"), owned and operated the Site.

43.     In 1958, Rockwell-Standard purchased the Site.

44.     In 1981, Gulfstream American Corporation, predecessor-in-interest of Gulfstream Aerospace Corporation, purchased and continued to use the Site to operate an aircraft manufacturing facility.

45.     In 1988, Gulfstream conveyed the Site to the Oklahoma City Airport Trust ("OCAT") and leased the plant from OCAT without halting operations.

46.     In 2002, manufacturing operations ceased at the Site.

47.     From 2002 until 2007, Gulfstream maintained the Site until its lease expired in December 2007.

48.     On January 1, 2008, OCAT took possession of the Site.

49.     From 1956 to 2001, Defendants Rockwell and Gulfstream utilized hazardous substances, including TCE and PCE, at the Site in the "chemical process line" for preparing metal for plating and painting (or "coating" as it is sometimes referred to in the industry).

50.     From 1956 to 1997, the chemical process line was located in Building 201 W on the Site, and from 1998 to 2001, it was located in Building 204.

51.     The chemical process line included a vapor degreaser tank that used chlorinated (halogenated) solvents, including trichloroethane ("1,1,1-TCA") and TCE, an etching tank that used various acids, a surfactant tank that contained soap, and a rinse tank that used water.

52.     Prior to the construction of an on-site wastewater treatment plant in 1988, waste water from the chemical process line was discharged into a sanitary sewer on the Site.

53.     At least one other building on the Site, Building 207, had vapor degreasers that used chlorinated (halogenated) solvents.

54.     Defendants Rockwell and Gulfstream have acknowledged using 1,1,1-TCA and TCE at the Site but have denied using PCE, which also is a chlorinated solvent used for degreasing purposes and was commonly used in aircraft maintenance and manufacturing.

55.     PCE, however, has been detected in both indoor air and sub-slab vapor samples collected from multiple buildings at the Site, including buildings that housed the chemical process line and vapor degreasers.  These buildings include Building 201E, Building 201W, Building 204, and Building 212.

56.     Defendants Rockwell and Gulfstream were heavy users of chlorinated (halogenated) solvents.  For example, according to the U.S. Environmental Protection Agency's ("EPA's") Toxic Release Inventory, the Site's use of  1,1,1-TCA in 1993 was nearly 70,000 lbs.  The Site's TCE use reported for 1998 was over 40,000 lbs.

57.     In addition to utilizing these hazardous substances in their production processes, Defendants stored a large amount of chemicals on the Site.

58.     In 1991, a contractor hired by EPA conducted an inspection of the Site after elevated levels of lead were detected in Bethany's drinking water wells and the Site was a suspected source.  The EPA contractor's findings were summarized in a report (the "EPA report"), dated March 31, 1992.

59.     The EPA report documented a 1986 spill of chromic acid mixed with 30 gallons of hydrofluoric acid that occurred when a 500-gallon acid holding tank was being

moved out of the process area.  Approximately 200 to 250 gallons of acid was lost by the time the leak was plugged.  Chromic acid is a common material used in aircraft maintenance and manufacturing. Hexavalent chromium is a common constituent used in both aircraft part plating and coating.

60.    The EPA report documented that in 1986 Gulfstream indicated that it was in the process of cleaning out old chemical products and as a result had accumulated a large amount of hazardous waste on the Site.

61.    Hazardous wastes were stored on the Site in 55-gallon drums on an approximately 750 sq. ft. concrete slab at the Site.  Chlorinated (halogenated) solvents are known to readily pass through concrete flooring.

62.    The EPA report noted that industrial chemicals and solvents also were being stored in a barrel house and paint storage area.

63.    The EPA report indicated that approximately 3,500 gallons of a variety of chemicals were stored at the Site year-round.  The EPA report indicated that TCE was one of these chemicals and noted that due to the quantity of waste chemicals on hand at the Site, there was a potential for hazardous waste spills.

64.    The EPA report indicated that the Oklahoma State Department of Health ("OSDH," the predecessor to the Oklahoma Department of Environmental Quality) had conducted an inspection of the Site in 1985 and found Gulfstream was in non-compliance with hazardous waste regulations pertaining to container labeling, a 90-day holding time limit on accumulated wastes, and record keeping.  OSDH conducted a second inspection of the Site in 1986 and reported seventeen areas of non-compliance concerning waste

handling, storage and accumulation times, occupational health and safety, and record keeping.

65.     The EPA report indicated that the entire City of Bethany is located within a 4-mile radius of the Site, and that seven of its drinking water wells were within 0.5 to 1 mile of the Site and 12 were within 1 to 2 miles.  The EPA report noted that Bethany relies exclusively on groundwater and has no alternate source of drinking water.

66.     In about 2008, Defendants first became aware that manufacturing operations and waste disposal activities at the Site had resulted in contamination of the soil and groundwater at and in the vicinity of the Site.

67.     Toxic substances contaminating the groundwater include TCE, PCE, and hexavalent chromium, which are hazardous wastes under RCRA and have been used by airline maintenance companies and manufacturers, including the Defendants.

68.     On October 26, 2009, Defendant OCAT entered into a Memorandum of Agreement and Consent Order ("MACO") with the Oklahoma Department of Environmental Quality ("ODEQ") in which OCAT agreed to investigate and perform certain remedial activities in order to address the contaminants identified on and in the vicinity of the Site.

69.     In December 2010, Defendants Rockwell and Gulfstream entered into a cost-sharing agreement with Defendant OCAT by which Defendants Rockwell and Gulfstream agreed to finance 86 percent of the costs incurred to perform and complete the environmental remediation at the Site, with Defendant OCAT contributing the remaining 14 percent.

70.     In 2012, sampling data began to show evidence that the leading edge of the contaminant plume was reaching the easternmost of Bethany's supply wells, specifically Wells 7 and 10.

71.     Bethany immediately discontinued the use of Wells 7 and 10 for drinking water supply purposes.

72.     Since 2012, Wells 7 and 10 have at various times had levels of TCE and PCE in excess of the federal maximum allowable contaminant level for drinking water, which is 5 micrograms per liter (or 5 parts per billion) for either compound.

73.     Traces of TCE and PCE also have been observed in other wells, located west and north of Wells 7 and 10, including Wells 1 and 20, indicating that the leading edge of the plume is encroaching farther into the South Wellfield.

74.     After testing confirmed that TCE and PCE also had reached Wells 1 and 20, Bethany shut down its entire South Wellfield.  As a result, two other wells, Wells 17 and 25, also were taken out of service.

75.     The South Wellfield accounts for about 60 percent of Bethany's total production capability.

76.     Bethany hired at its expense an environmental consultant, GSI Environmental ("GSI"), to advise it on how to respond to the contamination in order to protect its water supply and the customers Bethany serves.

77.     GSI recommended that Bethany use Wells 7 and 10, which were taken out of service for drinking water supply purposes, to intercept the contaminant plume as it enters Bethany's wellfield and limit the plume's migration toward active wells farther to

the north and west.  This would require Bethany to pump Wells 7 and 10 in order to collect contaminated water as it enters the wellfield, and then discharge the water for treatment.  This method is known as "hydraulic control."

78.    Bethany's consultant also recommended that the entire South Wellfield be taken offline because the continued pumping could draw the plume further into the wellfield and override the ability of Wells 7 and 10 to function as a hydraulic barrier and to capture the plume.

79.    On numerous occasions, Bethany has urged Defendants to initiate some action to curtail further migration of the contaminant plume into the South Wellfield.  In an effort to facilitate these discussions, Bethany and the Defendants Rockwell and Gulfstream entered into an agreement in March 2014 to toll any applicable statutes of limitation until December 15, 2015.  The agreement has since been amended twice with the tolling date currently extended to September 1, 2016.

80.    Defendants declined to take action to limit further migration of the contaminant plume into the South Wellfield.

81.    The loss of the South Wellfield has caused Bethany's water resources to be severely taxed, particularly in the summer months when water demand rises.

82.    The loss of additional wells resulting from groundwater contamination encroachment would result in a water supply crisis for Bethany and its customers.

83.    The threat of being forced to take additional water supply wells out of service required Bethany to take urgent action to control the further migration of contaminants into Bethany's wellfield.

84.     In order to replace the loss from the South Wellfield, Bethany tried to re-drill two out-of-service wells, Wells 12 and 21, located north of the South Wellfield. ODEQ denied the permit to re-drill Well 21 because of its proximity to the plume, and the permit for Well 12 was delayed almost a year.  Because Bethany was unable to put these wells online, it was forced to purchase a large amount of water from Oklahoma City in 2015 to meet peak demand.

85.     From June 2015 through November 2015, Bethany was forced to purchase replacement water from Oklahoma City at a cost in excess of $400,000.

86.     Bethany also needed to purchase water from Oklahoma City in June and July 2016, and expects to have to make additional purchases in the future.

87.     In June 2015, Bethany began pumping Wells 7 and 10 for hydraulic control purposes in order to maintain a hydraulic barrier to stop the westward migration of the contamination.

88.     Bethany has been forced to implement a water-rationing program in an attempt to preserve capacity for emergency use.

89.     Because of the loss of use of the South Wellfield, even with rationing, Bethany was and is incapable of producing water to meet the peak demand in the summer months, and the loss of water impairs Bethany's ability to provide sufficient reserves for emergency use such as fire protection or unplanned line breaks.

90.     On July 5, 2016, in order to provide adequate water supply to meet the peak demand and provide for adequate fire protection, the Bethany City Council declared an emergency situation and directed that Bethany open existing valves to connections with

the Oklahoma City public water supply as necessary to make up for the production lost in the wellfield.

91.     It costs substantially more for Bethany to obtain water from Oklahoma City than to produce it itself, resulting in a substantial increase in operating costs for the Bethany water system.

92.     Consequently, the Bethany City Council issued an ordinance, effective August 1, 2016, mandating that when Bethany is required to purchase water from Oklahoma City the excess costs will be passed as a surcharge to those customers using in excess of 20,000 gallons per month in order to maintain capacity of the water system. Thus, Bethany's customers also are bearing the financial burden of the contamination Defendants caused.

93.     Bethany also has hired an engineering firm to analyze the possibility of developing a new wellfield north of the Wiley Post Airport property in the event the South Wellfield is further contaminated.  The costs associated with drilling new wells and adding new pipelines will likely be in the multiple millions of dollars.

94.     To date, Bethany has incurred in excess of $1,000,000 in costs in responding to Defendants' contamination, including costs associated with drilling monitoring wells, conducting lab testing, hiring consultants, and operating the hydraulic barrier.  This amount does not include the costs Bethany must incur to drill new water supply wells, which are outside of the contamination plume, to ensure potable water to its customers.

95.     In 2017, Bethany learned that additional toxic chemicals, including 1,4-dioxane and per- and polyfluoroalkyl substances ("PFAS"), which was discovered in September 2017, had been detected in the groundwater and were impacting the South Wellfield.

96.     In August 2017, Bethany also learned that wells in its North Wellfield were being impacted by VOCs, which include TCE and PCE, and PFAS.

97.     Upon information and belief, North Wellfield is being impacted by releases from facilities located on the Wiley Post Airport property, which is owned and operated by Oklahoma City and OCAT.

98.     Unless permanent action is taken to remediate the contamination, toxic chemicals will continue to migrate toward Bethany's wells.

## FIRST CLAIM FOR RELIEF –PUBLIC NUISANCE

99.     Bethany re-alleges each of the preceding paragraphs, and by this reference incorporates each such paragraph as though set forth here in full.

100.     Bethany is the owner of land, easements, permits and/or water rights that allow it to extract groundwater for use in its public water supply servicing the residents of the City.

101.     The negligent, reckless and intentional activity of the Defendants, as alleged herein, has resulted in the contamination of Bethany's wells and the groundwater that supplies the community of Bethany.

102.     Defendants have caused a public nuisance under the common law and under Oklahoma Statutes Title 50, section 2 in that their actions "affect[] at the same time

an entire community or neighborhood, or any considerable number of persons, although the extent of the annoyance or damage inflicted upon the individuals may be unequal" because their pollution affects the entire community of Bethany.

103.    Defendants also have caused a public nuisance under Oklahoma Statutes Title 27A, section 2-6-105 in that they acted "to cause pollution of any waters of the state or to place or cause to be placed any wastes in a location where they are likely to cause pollution of any air, land or waters of the state" because they caused TCE, PCE and other hazardous wastes to contaminate the groundwater of the State.

104.    The negligent, reckless, and/or intentional activity of the Defendants, as alleged herein, has resulted in the contamination of the groundwater aquifer that supplies Bethany's groundwater, drinking water supplies, and other waters, and, consequently, affected the entire community of Bethany.

105.    The nuisance conditions caused, contributed to, maintained, assisted and/or participated in by the Defendants have caused substantial injury to Bethany's groundwater in which it has a significant property interest and Bethany's public supply wells.

106.    The nuisance conditions caused, contributed to, maintained, assisted and/or participated in by the Defendants have substantially and unreasonably interfered with, obstructed and/or disturbed Bethany's rights to appropriate, use and enjoy groundwater from its wells and continue to substantially and unreasonably interfere with, obstruct and/or disturb its rights to appropriate, use and supply to the community groundwater.

107.    This contamination also interferes with the right of the community to safe drinking water.

108.   Bethany is specially and adversely affected by the nuisance conditions alleged herein.

109.   As a direct and proximate result of Defendants' acts and omissions as alleged herein, Bethany's wells and the groundwater that supply them have been contaminated, causing Bethany significant injury and damages.   As a direct and proximate result of Defendants' acts and omissions as alleged herein, Bethany has incurred, is incurring, and will continue to incur, investigation, treatment, testing, remediation and monitoring costs and expenses related to the contamination.

110.   Defendants' conduct evinces wanton or reckless disregard for the rights of others, including Bethany.  Bethany is entitled to an award of punitive damages that is sufficient to punish Defendants and that fairly reflects the aggravating circumstances alleged herein.

## SECOND CLAIM FOR RELIEF – PRIVATE NUISANCE

111.   Bethany re-alleges each of the preceding paragraphs, and by this reference incorporates each such paragraph as though set forth here in full.

112.   Bethany is the owner of land, easements and water rights that permit it to extract groundwater for use.

113.   The negligent, reckless and intentional activity of the Defendants, as alleged herein, has resulted in the contamination of Bethany's groundwater.

114.   Defendants have caused a private nuisance under the common law and under Oklahoma Statutes Title 50, section 1 in that their actions "annoy[ ], injure[ ] or

endanger[ ] the comfort, repose, health, or safety of others," and render Bethany "insecure … in the use of property."

115.   The negligent, reckless, and/or intentional activity of the Defendants, as alleged herein, accordingly, has interfered with Bethany's rights and property interests and its use and enjoyment of those rights and interests.

116.   The negligent, reckless, and/or intentional activity of the Defendants, as alleged herein, has resulted in the contamination of the groundwater aquifer that supplies Bethany's wells, groundwater, drinking water supplies, and other waters.

117.   The nuisance conditions caused, contributed to, maintained, assisted and/or participated in by the Defendants have caused substantial injury to Bethany's wells and the groundwater that supply them, in which it has a significant property interest.

118.   The nuisance conditions caused, contributed to, maintained, assisted and/or participated in by the Defendants have substantially and unreasonably interfered with, obstructed and/or disturbed Bethany's rights to appropriate, use and enjoy groundwater and continue to substantially and unreasonably interfere with, obstruct and/or disturb its rights to appropriate, use and enjoy groundwater.

119.   Bethany is specially and adversely affected by the nuisance conditions alleged herein.

120.   As a direct and proximate result of Defendants' acts and omissions as alleged herein, Bethany's wells and the groundwater that supply them have been contaminated, causing Bethany significant injury and damages.   As a direct and proximate result of Defendants' acts and omissions as alleged herein, Bethany has

incurred, is incurring, and will continue to incur, investigation, treatment, testing, remediation and monitoring costs, water purchase costs, and other expenses related to the contamination.

121.    For the reasons set forth and specifically alleged in the Complaint, Defendants' conduct evinces wanton or reckless disregard for the rights of others, including Bethany.  Bethany is entitled to an award of punitive damages that is sufficient to punish Defendants and that fairly reflects the aggravating circumstances alleged herein.

## THIRD CLAIM FOR RELIEF - TRESPASS

122.    Bethany re-alleges each of the preceding paragraphs, and by this reference incorporates each such paragraph as though set forth here in full.

123.    Bethany is the owner and actual possessor of its wells and the groundwater and groundwater rights to extract water from those wells.

124.    Bethany owns, possesses and actively exercises its rights to appropriate and use groundwater, including groundwater from those of its wells that are contaminated.

125.    Defendants negligently, recklessly and/or intentionally failed to properly control, apply, use and/or dispose of contaminants, such that Defendants proximately caused contaminants to enter, invade, intrude upon and injure Bethany's possession of property.   Defendants engaged in affirmative conduct that caused, contributed to, maintained and/or assisted in the creation of the trespass alleged herein, as follows: Defendants knew, or should have known, that contaminants, including TCE and PCE were persistent, mobile, and could contaminate soil and groundwater.

126.    Bethany has not consented to, and does not consent to, the contamination alleged herein.  Defendants knew or reasonably should have known that Bethany would not consent to this trespass.

127.    As a direct and proximate result of Defendants' acts and omissions as alleged herein, Bethany's groundwater has been contaminated, causing it significant injury and damages.  As a direct and proximate result of Defendants' acts and omissions as alleged herein, Bethany has incurred, is incurring, and will continue to incur, investigation, treatment, testing, remediation and monitoring costs, water purchase costs, and other expenses related to the contamination of its wells.

128.    For the reasons set forth and specifically alleged above, Defendants' conduct evinces wanton or reckless disregard for the rights of others, including Bethany. Bethany is entitled to an award of punitive damages against Defendants that is sufficient to punish the Defendants and that fairly reflects the aggravating circumstances alleged herein.

## **FOURTH CLAIM FOR RELIEF – NEGLIGENCE**

129.    Bethany re-alleges each of the preceding paragraphs, and by this reference incorporates each such paragraph as though set forth here in full.

130.    Defendants owe Bethany a duty both at common law and under Oklahoma statutes, including Oklahoma Statutes Title 27A, section 2-6-105, not to allow pollutants to be released from the Site onto Bethany's land and groundwater, and Oklahoma Statutes Title 11, section 37-115, not to pollute the water supply of a municipality. Defendants had a duty to use due care in the handling, control, use, and disposal of

contaminants, including toxic and hazardous materials such as TCE and PCE on its Site, and to prevent, and to the extent feasible, eliminate contamination of Bethany's groundwater with contaminants in concentrations which may pose adverse health effects.

131.    Defendants breached their duty of care.

132.    Defendants so negligently, carelessly, and recklessly handled, controlled, and disposed of contaminants on its Site that they directly and proximately caused contamination of Bethany's wells and groundwater.

133.    As a direct and proximate result of Defendants' acts and omissions as alleged herein, Bethany's wells and groundwater have been, and continue to be, contaminated, causing Bethany significant injury and damages, and otherwise damaged its peace, repose and use and enjoyment of its property.

134.    As a direct and proximate result of Defendants' acts and omissions as alleged herein, Bethany has incurred, is incurring, and will continue to incur, investigation, treatment, remediation and monitoring costs, water purchase costs, and other expenses related to the contamination of its wells.

135.    For the reasons set forth and specifically alleged above, Defendants acted maliciously, wantonly, recklessly and with conscious disregard of the known risks of injury to others, including Bethany.  Bethany is entitled to an award of punitive damages against Defendants that is sufficient to punish the Defendants and that fairly reflects the aggravating circumstances alleged herein.

## FIFTH CLAIM FOR RELIEF – NEGLIGENCE PER SE

136.    Bethany re-alleges each of the preceding paragraphs, and by this reference incorporates each such paragraph as though set forth here in full.

137.    Defendants violated Oklahoma Statutes Title 27A, section 2-6-105 by causing pollution to the waters of the State and placing wastes in locations where they are likely to cause pollution of land and waters of the state.

138.     Oklahoma Statutes Title 27A, section 2-6-105 is intended to prevent pollution of the land and water, including groundwater, of the State.

139.    Defendants violated Oklahoma Statutes Title 11, section 37-115 by polluting or permitting the pollution of the water supply of a municipality.

140.    Oklahoma Statutes Title 11, section 37-115, is intended to prevent pollution of water being held for use by a municipality.

141.    Bethany's injuries are the result of Defendants polluting the groundwater.

142.    Bethany, as a municipality and on behalf of the public, is within the class to be protected by Oklahoma Statutes Title 27A, section 2-6-105, which declares any action causing pollution of the waters of the State to be a public nuisance, and Oklahoma Statutes Title 11, section 37-115, which makes it unlawful to pollute a public water supply.

143.    Defendants owe Bethany a duty under Oklahoma Statutes Title 27A, section 2-6-105, and Oklahoma Statutes Title 11, section 37-115, not to allow pollutants to be released from the Site into the groundwater used as a water supply for a municipality.

144. Defendants breached their duty of care under Oklahoma Statutes Title 27A, section 2-6-105, and Oklahoma Statutes Title 11, section 37-115.

145. Defendants' violation of Oklahoma Statutes Title 27A, section 2-6-105, and Oklahoma Statutes Title 11, section 37-115, constitutes negligence *per se*.

146. As a direct and proximate result of Defendants' acts and omissions as alleged herein, Bethany has incurred, is incurring, and will continue to incur, investigation, treatment, remediation and monitoring costs, water purchase costs, and other expenses related to the contamination.

147. For the reasons set forth and specifically alleged above, Defendants acted maliciously, wantonly, recklessly and with conscious disregard of the known risks of injury to others, including Bethany. Bethany is entitled to an award of punitive damages against Defendants that is sufficient to punish the Defendants and that fairly reflects the aggravating circumstances alleged herein.

## SIXTH CLAIM FOR RELIEF – UNLAWFUL POLLUTION OF A MUNICIPAL WATER SUPPLY

148. Bethany re-alleges each of the preceding paragraphs, and by this reference incorporates each such paragraph as though set forth here in full.

149. Oklahoma Statutes Title 11, section 37-115, makes it unlawful for any person, firm, partnership, or corporation, or any of the partners, officers, managers, or employees thereof to pollute or permit the pollution of the water supply of a municipality, including groundwater which is used or being held for use as a water supply by a municipality.

150.    Pollution means "contamination or other alteration of the physical, chemical, or biological properties of any natural waters of the state, or such discharge of any liquid, gaseous, or solid substance into any waters of the state as will or is likely to create a nuisance or render such waters harmful or detrimental or injurious to the health, safety, or welfare of the general public."

151.    Defendants polluted and/or permitted the pollution of the water supply of a municipality, including groundwater which is used or being held for use as a water supply by a municipality when they caused through their actions and omissions TCE and PCE to contaminate and alter the physical and chemical properties of the groundwater Bethany uses and holds for use as a public water supply.

152.    Oklahoma Statutes Title 11, section 37-116, provides that a municipality shall have a right of action for damages resulting from pollution of its water supply and the measure of damages shall be the amount which will compensate for the detriment caused thereby.

153.    The pollution that has contaminated Bethany's water supply has continued for a period longer than six months.

154.    For the reasons set forth above, Bethany is entitled to an award of damages against Defendants that will compensate it for the permanent injury they have caused to its water supply.

## <u>SEVENTH CLAIM FOR RELIEF – GROSS NEGLIGENCE</u>

155.    Bethany re-alleges each of the preceding paragraphs, and by this reference incorporates each such paragraph as though set forth here in full.

156.    Defendants' conduct as described herein evidences the lack of even slight care, and thus constitutes gross negligence.  Defendants' conduct has been willful and wanton, demonstrating a course of action showing an actual or deliberate intention to injure or, if not intentional, shows an utter indifference to or conscious disregard for the safety of others.  Defendants' polluting conduct has proximately caused damage and injury to Bethany.

157.    As a direct and proximate result of Defendants' acts and omissions as alleged herein, Bethany has incurred, is incurring, and will continue to incur, investigation, treatment, remediation and monitoring costs, water purchase costs, and other expenses related to the contamination of its wells.

158.    For the reasons set forth and specifically alleged above, Defendants acted maliciously, wantonly, recklessly and with conscious disregard of the known risks of injury to others, including Bethany.  Bethany is entitled to an award of punitive damages against Defendants that is sufficient to punish the Defendants and that fairly reflects the aggravating circumstances alleged herein.

## EIGHTH CLAIM FOR RELIEF – WILLFUL INJURY TO PROPERTY

159.    Bethany re-alleges each of the preceding paragraphs, and by this reference incorporates each such paragraph as though set forth here in full.

160.    Defendants' actions, as described herein, have proximately caused injury to Bethany's property.  Defendants' actions have been committed intentionally or at the very least in reckless disregard to the rights of Bethany and in reckless disregard to the dangers and risk implicated by its actions.

161.    As a direct and proximate result of Defendants' acts and omissions as alleged herein, Bethany has incurred, is incurring, and will continue to incur, investigation, treatment, remediation and monitoring costs, costs of water purchase, and other expenses related to the contamination.

162.    For the reasons set forth and specifically alleged above, Defendants acted maliciously, wantonly, recklessly and with conscious disregard of the known risks of injury to others, including Bethany.  Bethany is entitled to an award of punitive damages against Defendants that is sufficient to punish the Defendants and that fairly reflects the aggravating circumstances alleged herein.

## NINTH CLAIM FOR RELIEF – RESOURCE CONSERVATION AND RECOVERY ACT CITIZEN SUIT, 42 U.S.C. § 6972(a)(1)(B)

163.    Bethany re alleges and reaffirms each and every allegation set forth in all preceding paragraphs as if fully restated in this section.

164.    Pursuant to Section 7002(A)(1)(B) of RCRA, having given the required notice, Bethany may commence a citizen suit against "any person," "including any past or present generator, past or present transporter, or past or present owner or operator of a treatment, storage, or disposal facility, who has contributed or who is contributing to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste which may present an imminent and substantial endangerment to health or the environment."  42 U.S.C. § 6972(a)(1)(B).

165.    Bethany is a "person" as defined by 42 U.S.C. § 6903(15).

166.   Each Defendant is a "person" as defined by 42 U.S.C. § 6903(15) subject to the citizen suit provisions of RCRA, 42 U.S.C. § 6972.

167.   The hazardous and toxic chemicals that are the subject of this lawsuit, including TCE and PCE,  are "hazardous waste" as defined by RCRA, 42 U.S.C. § 6903(5), and "solid waste" as defined by RCRA, 42 U.S.C. § 6903(27).

168.   The residents of Bethany receive their drinking water exclusively from groundwater sources via public wells.

169.   As alleged above, all Defendants have engaged in the operations of handling, storage, treatment, transportation, or disposal of hazardous and toxic chemicals, including TCE and PCE.  Defendants have mishandled their waste by discharging them into the environment and not ensuring that the wastes were lawfully managed and disposed.  Thus, the Defendants have contributed and are contributing to the past and present discharge of a solid and hazardous waste in violation of RCRA.

170.   As alleged above, Defendants' activities in handling, storing, treating, and transporting hazardous and toxic chemicals, including TCE and PCE, caused releases, spills and disposal of TCE and PCE, into the environment.  These releases, spills and disposal have contaminated Bethany's property and water.

171.   Such contamination of soil and groundwater presents an imminent and substantial endangerment to public health and the environment.

172.   Consequently, each Defendant, through its handling, storage, treatment, transportation, or disposal of hazardous and toxic chemicals, including TCE and PCE,

created an imminent and substantial endangerment to health and the environment in violation of RCRA.

173.   In accordance with RCRA, Defendants are subject to injunctive relief requiring them to take necessary actions to abate this endangerment.

## PRAYER FOR RELIEF

WHEREFORE, Bethany respectfully requests a trial of this Action before a jury, and that, upon a favorable verdict, this Court enter judgment in favor of Bethany and against Defendants, awarding Bethany:

    a.      Compensatory damages according to proof;

    b.      injunctive and equitable relief to compel Defendants to comply with RCRA and to abate the continuing nuisance and trespass by removing toxic chemicals, including TCE and PCE, from soil and groundwater;

    c.      punitive damages;

    d.      costs of litigation;

    e.      prejudgment interest;

    f.      attorney's fees; and

    g.      such other and further relief as the Court may deem just and proper.

DATED:        July 2, 2018

By:     */s/ David P. Page*
     David P. Page, Esq. OBA #6852
     BARBER & BARTZ, LLP
     525 S. Main St. #800
     Tulsa, OK  74103Telephone:  918-599-7755
     Facsimile:   918-599-7756
     dpage@barberbartz.com


     Robin L. Greenwald, Esq. (*pro hac vice*)
     Curt D. Marshall, Esq. (*pro hac vice*)
     Nancy M. Christensen, Esq. (*pro hac vice*)
     WEITZ & LUXENBERG, P.C.
     700 Broadway
     New York, NY  10003
     Telephone:  212-558-5505
     Facsimile:  212-344-5461
     rgreenwald@weitzlux.com
     cmarshall@weitzlux.com
     nchristensen@weitzlux.com
     ***Attorneys for Plaintiff***