UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

---------------------------------------------------------
CITY OF BETHANY, OKLAHOMA,

         Plaintiff,

         v.

ROCKWELL AUTOMATION, INC., and
GULFSTREAM AEROSPACE CORP.,

         Defendants.
---------------------------------------------------------

Case No. 16-CV-1005-SLP

**PLAINTIFF'S REPLY BRIEF IN SUPPORT OF ITS MOTION TO AMEND AND SUPPLEMENT ITS COMPLAINT AND JOIN ADDITIONAL PARTIES**

WEITZ & LUXENBERG, P.C.
700 Broadway
New York, NY 10003
Telephone: 212-558-5505
Facsimile: 212-344-5461

BARBER & BARTZ, LLP
525 S. Main St. #800
Tulsa, OK 74103
Telephone: 918-599-7755
*Attorneys for Plaintiff*

Defendants Rockwell Automation, Inc. ("Rockwell") and Gulfstream Aerospace Corp. ("Gulfstream") oppose Plaintiff City of Bethany's motion to amend its complaint and join additional parties. Defendants argue that Bethany's motion should be denied because it would "unduly burden" Defendants and because it is "futile."

Defendants claim that Bethany's amendments to add parties and allegations regarding the recent discovery of 1,4-dioxane and per- and polyfluoroalkyl substances ("PFAS") in sampling results from wells in Bethany's South Wellfield and the recent discovery of trichloroethylene ("TCE"), tetrachloroethylene ("PCE") and PFAS in wells in the North Wellfield would "dramatically expand the scope of the lawsuit," and prejudice Defendants because they have expended significant time and resources responding to discovery in a much more limited case.

Bethany's lawsuit is not so narrowly defined. In its original complaint, Bethany seeks damages for any toxic chemicals or hazardous substances released from Defendants' facility that impact Bethany's groundwater. Defendants' suggestion that they are now being blindsided by Bethany's proposed amendments are somewhat disingenuous. Defendants did not object to either of Bethany's motions to extend this Court's deadline to amend the complaint and add parties (Dkt. Nos. 50 and 52). Defendants have known that Bethany has been contemplating adding Oklahoma City and the Oklahoma City Airport Trust ("OCAT") as defendants to its lawsuit. Defendants also have known that the recent discovery of 1,4-dioxane and PFAS in the South Wellfield would become an issue in this litigation whether or not Bethany amended its pleadings to add specific allegations regarding these chemicals. Defendants propounded discovery

requests to Bethany months ago seeking information regarding 1,4-dioxane and PFAS—and, contrary to Defendants' assertion, Bethany is not changing its theory of the case and injecting entirely new and separate claims.  The 1,4-dioxane contamination impacting the South Wellfield, in particular, is almost certainly attributable to Defendants' operations.  As Bethany alleges in its proposed amended complaint, 1,4-dioxane was commonly used as a stabilizer for storage and transportation of 1,1,1-trichloroethane ("1,1,1-TCA").  *See* Dkt. No. 61-1 at ¶ 11.  In their answer to Bethany's original complaint, Defendants admitted to using massive amounts of 1,1,1-TCA during their operations.  *See* Defendants' Answer and Counterclaims (Dkt. No. 25), at ¶¶ 38, 40, 42, 43, 45.

As to Defendants' argument that Bethany's proposed amendments are futile because Bethany has not provided the requisite notice under the citizen suit provisions of the Resource Conservation and Recovery Act ("RCRA"), the Court stayed Bethany's RCRA claim in this case pending the completion of the administrative proceedings of the Oklahoma Department of Environmental Quality ("ODEQ") in *In re Former Aero Commander Facility at Wiley Post Airport,* Case No. 09-301.  This Court ordered that this case should move forward on Plaintiff's tort claims for damages—and that is what Bethany seeks to do here.  Remediation of underground, migrating groundwater contamination can go on for decades.  Bethany cannot wait that long to resolve its public water supply emergency.

In its original complaint, Bethany noted that it was exploring the possibility of expanding the Northern Wellfield as a way to make up for the loss of use of its Southern Wellfield, and warned that its already taxed water supply system could not afford to lose

additional wells.  Now that Bethany's Northern Wellfield is in jeopardy, Bethany faces a crisis.  Bethany should not be forced to resolve this crisis in the piecemeal manner suggested by Defendants.  In the interest of justice, Bethany should be allowed to pursue its tort claims against Oklahoma City and OCAT in this case.

## ARGUMENT

### I. Defendants Will Not Be Prejudiced By Bethany's Proposed Amendments.

Defendants' argument that they will be "unduly burdened" if Bethany's motion is granted because it will dramatically expand the scope of the lawsuit, and Defendants have expended considerable time and resources responding to discovery and preparing their defense to a more limited case does not hold up to scrutiny.

Defendants' claim that Bethany has delayed in filing this motion, but twice Bethany sought an extension of this Court's deadline to amend its pleadings and join additional parties and neither time did Defendants object to the motion.  *See* Dkt. Nos. 50 and 52.  In fact, Bethany and Defendants agreed they would seek leave of the Court to amend deadlines in the February 1, 2018 scheduling order in the event Bethany elected to add additional parties or amend its complaint.  Dkt. No. 52 at ¶ 5.

As Bethany indicated in its March 29, 2018, request for an extension, additional contamination had been identified since Bethany filed its complaint—this includes 1,4-dioxane and PFAS discovered in Bethany's South Wellfield.  This information has not been kept secret.  Bethany notified ODEQ that these chemicals were detected in some of its wells, and Defendants are now required to routinely sample for 1,4-dioxane under their current cleanup plan.

4

While Defendants may argue that they have been laboring under the belief that this lawsuit is limited to impacts caused by TCE and PCE contamination, they propounded discovery requests to Bethany on March 30, 2018, that define "Contaminants of Concern" as:

> any substance that forms the basis for the City's claims against Defendants in the Lawsuit, including Trichloroethylene ("TCE"), Trichloroethane ("TCA"), Perchloroethylene ("PERC" or "PCE"), 1,4-Dioxane, Perfluorooctanoic Acid ("PFOA"), Perfluorooctanesulfonic acid ("PFOS"), lead, and hexavalent chromium.

Defendants' own discovery requests belie the argument they make now in opposition to Bethany's motion to amend.

Furthermore, the addition of Oklahoma City and OCAT as defendants does not dramatically expand the scope of the lawsuit.  Whether or not it is named as a party, OCAT already is involved.  OCAT has owned Defendants' former facility since 1988.  In 2009, OCAT entered into a Memorandum of Agreement and Consent Order ("MACO") with ODEQ in which OCAT agreed to investigate and perform certain remedial activities in order to address the contaminants on and in the vicinity of Defendants' former facility—an admission that OCAT has some liability for the contamination.  In 2010, Defendants and OCAT entered into a cost sharing agreement to finance the costs incurred to perform and complete the environmental remediation at Defendants' former facility. Defendants' environmental consultants, whose information will be produced in discovery, also work for OCAT.

As to Defendants' argument that adding allegations regarding the recently discovered impacts to the Northern Wellfield greatly expands the scope of the litigation because it increases the acreage at issue, it is true that the property owned by Oklahoma City and OCAT encompasses more acres—it is after all an airport, and many of those acres are comprised of open space surrounding runways—but this case deals with offsite groundwater contamination. While Defendants' former facility takes up 43-acres, contamination from the facility has migrated off-site in the form of a three-quarters of a mile long plume that has reached Bethany's South Wellfield. The wells in the North and South Wellfields that are being impacted by contamination are west of the airport facilities and Defendants' former facility that is directly south of the actual airport. OCAT already has accepted liability for contamination at and emanating from Defendants' former facility. In the interest of justice and judicial economy, Bethany should be able to pursue its tort claims for all of the contamination impacting its wells under one lawsuit.

In *Chaveriat v. Williams Pipe Line Co.,* 11 F.3d 1420 (7th Cir. 1993), the Seventh Circuit found that the district court did not abuse its discretion in refusing to allow the complaint to be amended to assert a new claim regarding a fairly recent spill of diesel fuel that represented a change in the theory of the case "after there ha[d] been extensive discovery during which the claim was never so much as hinted at." *Id.* at 1430. At the time plaintiffs moved to amend their complaint, discovery, other than of expert witnesses, had been closed for one month. *Id.* at 1424. Plaintiffs claimed to have only recently discovered the diesel fuel and in support of their claim sought to submit as evidence

chromatograms that the court believed should already have been produced in the litigation years earlier. None of these factors are present here. Under the current scheduling order in this case, discovery is to be completed by May 1, 2019. *See* Dkt. No. 49. Bethany sought leave of the Court to extend the deadline to file this motion and Bethany is not alleging a change in the theory of the case after the close of discovery.

There simply has not been the sort of delay here that occurred in the cases cited by Defendants in support of their claim that they will face an "undue burden" or prejudice if Bethany's motion is granted. *See, e.g., A.E. v. Mitchell,* 724 F.2d 864, 868-869 (1983) (affirming denial where plaintiffs sought leave to amend their complaint a fourth time nearly a year after the district court issued an order denying plaintiffs' claims for injunctive and declaratory relief); *Koch v. Koch Indus.,* 127 F.R.D. 206 (D. Kan. 1989) (affirming denial where plaintiff sought to add racketeering claims to securities fraud claims after four years of pending litigation); *Hom v. Squire,* 81 F.3d 969 (10th Cir. 1996) (finding a motion to amend untimely where plaintiff waited two months after learning additional facts to file a motion to amend, where such a motion was filed nearly two years after the deadline for amending pleadings and nearly two months before the scheduled trial date.)

## II.     Bethany's Proposed Amendments Are Not Futile.

Defendants further argue that Bethany's claim is futile because Bethany failed to provide the requisite pre-suit notice under RCRA for the additional contaminants that were recently discovered or any impacts to the Northern Wellfield. Defendants ignore, however, that the RCRA claim in this case already has been stayed until the completion

of ODEQ's administrative action in *In re Former Aero Commander Facility at Wiley Post Airport,* Case No. 09-301. Bethany seeks to move forward in this case on its tort claims, just as this Court ordered. This Court retains jurisdiction over the stayed RCRA claim, as well as Defendants' CERCLA counterclaim, therefore the holding of *Koch v. City of Del City,* 660 F.3d 1228, 1248 (10th Cir. 2011) is inapplicable.

Furthermore, *Koch* really just stands for the proposition that an appeals court will only review a district court's denial of supplement jurisdiction under an abuse of discretion standard. *Id.* at 1248. Under 28 U.S.C. § 1367(c)(3), a district court *may* decline to exercise supplemental jurisdiction if "the district court has dismissed all claims over which it has original jurisdiction." *See, e.g., Arbaugh v. Y&H Corp.,* 546 U.S. 500, 514 (2006) (in case involving federal claim and state-law claims, federal district court can exercise supplemental jurisdiction over state-law claims after federal claim is dismissed for failure to state a claim). As an additional practical matter, dismissal of a RCRA citizen suit claim for failing to comply with a 60-day notice requirement will not bar a plaintiff from filing suit once they have provided adequate notice. *See Hallstrom v. Tillamook County,* 493 U.S. 20, 22 (1989).

## CONCLUSION

For the foregoing reasons, Bethany's Motion to Amend its Complaint and Join Additional Parties should be granted.

Date:  July 30, 2018

        Respectfully submitted,


        */s/ Nancy M. Christensen*
        Robin L. Greenwald, Esq. (*pro hac vice*)
        Curt D. Marshall, Esq. (*pro hac vice*)
        Nancy M. Christensen, Esq. (*pro hac vice*)
        **WEITZ & LUXENBERG, P.C.**
        700 Broadway
        New York, NY  10003
        Telephone:  212-558-5505
        Facsimile:  212-344-5461
        rgreenwald@weitzlux.com
        cmarshall@weitzlux.com
        nchristensen@weitzlux.com

        David P. Page, Esq. OBA #6852
        **BARBER & BARTZ, LLP**
        525 S. Main St. #800
        Tulsa, OK  74103
        Telephone:  918-599-7755
        dpage@barberbartz.com
        *Attorneys for Plaintiff*

CERTIFICATE OF SERVICE

I hereby certify that on I hereby certify that on the 30th day of July, 2018, I electronically filed the above and foregoing with the clerk of the court using the CM/ECF system, which will send electronic notice to:


Stephen L. Jantzen
Ryan Whaley Coldiron Jantzen Peters & Webber PLLC
119 North Robinson, Suite 900
Oklahoma City, OK 73102
*Counsel for Defendants*

Steven M. Siros
Jenner & Block LLP
353 N. Clark Street
Chicago, IL 60654
*Counsel for Defendants*

                                                 */s/ Nancy M. Christensen*
                                                 Nancy M. Christensen